**F I L E D**

PUBLISH

**AUG 31 2001**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

vs.

ANDREW POMPEY, also known as
Boss, Andrew Tyson Pompey, and
Drew,

     Defendant - Appellant.

No. 00-2299

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR-97-638 JC)

Submitted on the briefs:[*]

Norman C. Bay, United States Attorney and Peter M. Ossorio, Assistant United
States Attorney, Las Cruces, New Mexico, for Plaintiff - Appellee.

Michael G. Katz, Federal Public Defender and James P. Moran, Assistant Federal
Public Defender, Denver, Colorado, for Defendant - Appellant.

Before **SEYMOUR**, **ANDERSON**, and **KELLY**, Circuit Judges.

---

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G). The cause therefore
is ordered submitted without oral argument.

**KELLY**, Circuit Judge.

Appellant-Defendant Andrew Pompey appeals his conviction and sentence for a series of drug-related crimes. In October 1997, a grand jury charged Mr. Pompey and eleven other defendants with eighteen counts of drug trafficking and firearms offenses. Mr. Pompey was named in five of the counts: conspiracy to distribute more than 50 grams of cocaine base, 21 U.S.C. §§ 841, 846 (Count 1); two counts of distribution of more than 50 grams of cocaine base, § 841(a)(1), (b)(1)(A) (Counts 3 and 6); distribution of more than 5 grams of cocaine base within 1000 feet of real property comprising a public school, §§ 841(a)(1), (b)(1)(B), 860(a) (Count 5); and possession with the intent to distribute more than 500 grams of cocaine, § 841(a)(1), (b)(1)(B), 18 U.S.C. § 2 (Count 18). Supp. I R. Doc. 1.

After a series of competency evaluations and hearings, Mr. Pompey was eventually found competent to stand trial and a jury convicted him of all five counts in February 2000. The district court sentenced Mr. Pompey to 20 years on each of Counts 1, 3, 6, and 18, and 40 years on Count 5, all terms to be served consecutively. The court also imposed a supervised release term of three years as to each of Counts 1, 3, 6, and 18, and six years as to Count 5, all terms to run concurrently. IX R. at 36-38 (transcript of sentencing hearing).

On appeal, Mr. Pompey raises three issues: (1) that he was not competent to stand trial; (2) that his conviction and sentence must be vacated because 21 U.S.C. § 860(a) exceeds Congress' authority under the Commerce Clause; and (3) that the district court erred in increasing Mr. Pompey's offense level for possession of a dangerous weapon. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

## Discussion

Because the parties are familiar with the facts, we will not restate them here but refer to them only as necessary for our analysis. We address each of Mr. Pompey's issues in turn.

### Competency to Stand Trial

Mr. Pompey's competency is a subject in which the district court is well-versed. After Mr. Pompey was charged in October 1997, the parties jointly moved for a competency evaluation in March 1998. A federal medical center psychologist found Mr. Pompey to be a malingerer and competent to stand trial. II R. at 16, 19, 22-24. In November 1998, the district court held a full evidentiary hearing and found Mr. Pompey competent to stand trial. Id. at 95-96.

In January 1999, Mr. Pompey moved for a second competency evaluation, and the district court granted the motion. After the district court received the

locally-conducted evaluation, the court held a second evidentiary hearing in which the court found Mr. Pompey presently incompetent to stand trial and ordered him to a second, different, federal medical center for treatment. Aplee. Br. at 8-12. After Mr. Pompey was treated and evaluated for several months, personnel at the federal medical center concluded that Mr. Pompey was malingering and was competent to stand trial. VIII R. at 31-44, 97-98. In November 1999, the district court held a third evidentiary hearing and found that Mr. Pompey was competent to stand trial. Id. at 106. The trial was held in February 2000, and the jury convicted Mr. Pompey on all five counts. Aplt. Br., Att. A at 1 (Judgment). On appeal, Mr. Pompey argues that the district court erred in finding him competent to stand trial. Aplt. Br. at 22-24.

"Competency to stand trial is a factual determination that can be set aside only if it is clearly erroneous." United States v. Boigegrain, 155 F.3d 1181, 1189 (10th Cir. 1998) (citation omitted). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Mackovich, 209 F.3d 1227, 1232 (10th Cir.) (internal quotations and citation omitted), cert. denied, 121 S. Ct. 248 (2000). A defendant is competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and . . . [if] he

has a rational as well as factual understanding of the proceedings against him."

Dusky v. United States, 362 U.S. 402, 402 (1960). "Obviously we must rely heavily on the discretion of the district court in applying this standard to the defendant." United States v. Parsons, 967 F.2d 452, 455 (10th Cir. 1992). When determining a defendant's competency, the district court "may rely on a number of factors, including medical opinion and the court's observations of the defendant's comportment." Boigegrain, 155 F.3d at 1189.

After reviewing the record and the submissions of the parties, we do not think that the district court's finding that Mr. Pompey was competent to stand trial was erroneous, much less clearly erroneous. At the third evidentiary hearing alone, the district court heard from defense counsel, the forensic psychologist who prepared the latest evaluation of Mr. Pompey, a psychologist who assisted in the preparation of that evaluation, and Mr. Pompey himself. See VIII R. (transcript of Nov. 2, 1999 competency hearing). The forensic psychologist testified that after evaluating Mr. Pompey over several months and reviewing past evaluations of Mr. Pompey, she had concluded that he was malingering and was actually competent to stand trial. Id. at 31-44, 97-98. It was within the district court's province to assess the credibility of the witnesses, including the forensic psychologist and Mr. Pompey himself. The district court considered a number of factors, including defense counsel's concerns, past and current medical opinion,

and its own observations of Mr. Pompey, in making its decision regarding Mr. Pompey's competence. This was not clearly erroneous.

Commerce Clause and Section 860(a)

Mr. Pompey's second argument on appeal is that 21 U.S.C. § 860(a), a section of the Drug Free School Zones Act that doubles the maximum penalty for the distribution, possession with intent to distribute, or manufacture of a controlled substance within one thousand feet of a school, is unconstitutional because it exceeds Congress' authority under the Commerce Clause. A jury convicted Mr. Pompey of distributing cocaine base within 1000 feet of a school (Count 5), and the district court sentenced Mr. Pompey to forty years on this count alone.

"Statutes are presumed constitutional. We review challenges to the constitutionality of a statute de novo." United States v. Dorris, 236 F.3d 582, 584 (10th Cir. 2000) (citations omitted), cert. denied, 121 S. Ct. 1635 (2001). Of the ten circuits we are aware of that have considered the constitutionality of § 860(a), all have uniformly held the statute to be constitutional. See United States v. Zorrilla, 93 F.3d 7, 8-9 (1st Cir. 1996); United States v. Ekinci, 101 F.3d 838, 844 (2d Cir. 1996); United States v. Orozco, 98 F.3d 105, 107 (3d Cir. 1996); United States v. Woodson, 163 F.3d 600, 1998 WL 654449, at **4-5 (4th Cir. 1998) (unpublished); United States v. Dixon, 132 F.3d 192, 202 (5th Cir. 1997); United

States v. Allen, 106 F.3d 695, 701 (6th Cir. 1997); United States v. McKinney, 98 F.3d 974, 978 (7th Cir. 1996); United States v. Henson, 123 F.3d 1226, 1233 (9th Cir. 1997), overruled on other grounds by United States v. Foster, 165 F.3d 689 (9th Cir. 1999); United States v. Jackson, 111 F.3d 101, 102 (11th Cir. 1997); United States v. Hawkins, 104 F.3d 437, 440 (D.C. Cir. 1997).

As Congress has explicitly stated, "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801(6). See also Orozco, 98 F.3d at 107 ("Drug trafficking near a school zone is an economic activity that, through repetition, substantially affects interstate commerce."). Therefore, [b]ecause we accept that the Congress has the authority to regulate all of the commerce in controlled substances, there is no need to consider . . . whether the Congress has the authority to regulate a portion of that commerce. The legislature has the discretion, absent some competing constitutional constraint, to decide when, how, and how much of an activity that affects interstate commerce to regulate." Hawkins, 104 F.3d at 440.

Mr. Pompey's reliance on United States v. Morrision, 529 U.S. 598 (2000) (holding that the civil remedy provision of the Violence Against Women Act exceeded Congress' power under the Commerce Clause) and Jones v. United States, 529 U.S. 848 (2000) (holding an owner-occupied private residence not

used for any commercial purpose does not qualify as property "used in" commerce and, therefore, that the arson of such a building may not be prosecuted under the federal arson statute) is unavailing. The Court in both <u>Morrison</u> and <u>Jones</u> stressed that the issues in those cases involved activities that were not commercial in nature and that were "traditional state concern[s]." <u>Jones</u>, 529 U.S. at 857-58; <u>accord Morrison</u>, 529 U.S. at 613, 618. "[T]he pattern of analysis is clear. Where economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained." <u>Morrision</u>, 529 U.S. at 610 (internal quotations and citations omitted). We think any party would be hard-pressed to prove that trafficking in controlled substances is not an economic activity and not an issue of national concern. Therefore, we adopt the reasoning of our sister circuits and hold § 860(a) constitutional.

<u>Firearm Enhancement</u>

Mr. Pompey's third and final argument on appeal is that the district court erred in enhancing his offense level by two levels for possession of a firearm during the course of the drug conspiracy. Aplt. Br. at 33; <u>see also</u> U.S.S.G. § 2D1.1(b)(1). Mr. Pompey objected to this enhancement in his written objections to the presentence report, Supp. I R., Doc. 448 at 5, and orally at the sentencing hearing. IX R. at 23-24 (transcript of July 25, 1999 sentencing hearing). The court adopted the recommendation of the presentence report and applied the two-

level enhancement. Id. at 36; see also II R, PSR at 15, ¶ 69. Mr. Pompey asserts that there was insufficient evidence to allow the district court to do so because no firearm was ever seized from him. We disagree.

"We review factual findings under U.S.S.G. § 2D1.1(b)(1) for clear error; we give due deference to the application of the Guidelines to the facts; we review purely legal questions de novo." United States v. Vaziri, 164 F.3d 556, 568 (10th Cir. 1999). "The [enhancement for weapon possession] should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1), comment., n.3. The government bears the initial burden of proving possession by a preponderance of the evidence. United States v. Humphrey, 208 F.3d 1190, 1210 (10th Cir. 2000) (citation omitted). The government may satisfy this burden by showing "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant," United States v. Roederer, 11 F.3d 973, 982 (10th Cir. 1993) (internal quotations and citation omitted), or, in other words, "mere proximity to the offense." Vaziri, 164 F.3d at 568. Once the government has satisfied its initial burden, the burden shifts to the defendant to show "that it is clearly improbable the weapon was connected with the offense." Id. In a drug conspiracy, the adjustment may be applied to the defendant even if the gun was possessed by one of the defendant's co-conspirators. Humphrey, 208 F.3d at 1210

("[I]n a drug conspiracy conviction the adjustment should be applied unless it is clearly improbable that the weapon was connected with the conspiracy offense.") (citation omitted).

In this case, the government proffered at the sentencing hearing that during the course of the drug conspiracy, Mr. Pompey made statements during intercepted telephone calls that established that he had attempted and been successful in obtaining a gun. In these same statements, Mr. Pompey indicated that the gun was to be used in connection with his drug trafficking business. A gun of the same caliber was recovered from the address of one of Mr. Pompey's co-defendants. In addition, the government found two semi-automatic pistol magazines and live ammunition at Mr. Pompey's residence. See IX R. at 4-7. Mr. Pompey did not challenge any part of the government's proffer and waived the right to cross-examine the government's witness. Id. at 7.

Mr. Pompey repeatedly asserts in his brief that because no gun was ever seized from him directly, that the enhancement should not apply. This is not the law. The government must simply prove by a preponderance of the evidence that Mr. Pompey possessed a firearm that was connected with the conspiracy offense. The gun itself need not be produced if adequate alternative evidence exists. See, e.g., United States v. Franco-Torres, 869 F.2d 797, 799-800 (5th Cir. 1989). We believe such evidence exists in this case, and find that the government has carried

its initial burden. Because Mr. Pompey adduced no evidence to show that it is clearly improbable that the gun was connected with the drug conspiracy, the district court did not err in applying the two-level enhancement.

AFFIRMED.