**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 8, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSE I. RIVERA-MORALES,

Defendant-Appellant.

No. 07-2003
(D. New Mexico)
(D.C. No. CR-04-561-LH)

---

**ORDER AND JUDGMENT**[*]

---

Before, **HENRY**, Chief Judge, **McWILLIAMS**, Senior Circuit Judge, and **HOLMES**, Circuit Judge.

---

Jose Ignacio Rivera-Morales pleaded guilty to one count of conspiring to distribute 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846, pursuant to a plea agreement. The court sentenced Mr. Rivera-Morales to 78 months' imprisonment – the low end of the advisory Guidelines range – followed by three years of supervised release. Mr. Rivera-Morales now challenges his sentence. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

## A.  Factual Background

On March 4, 2004, a New Mexico State Police officer stopped a car that Edwin Arturo Talamantes was driving, because the front passenger, Leslie Gonzalez, was not wearing a seatbelt.  Mr. Rivera-Morales was sitting in the backseat.  The officer smelled an odor of marijuana coming from the car, and asked Ms. Gonzalez to step out.  The officer then questioned Mr. Talamantes, who gave a false name and date of birth.  Mr. Talamantes claimed they had driven to Arizona in order to pick up his cousin.  When the officer asked Mr. Rivera-Morales for the city they were to drive to, he answered that they had gone to Ajo, Arizona.  After Ms. Gonzalez gave the officer a different purpose for and route of their trip, the officer asked if he could search the car, and Ms. Gonzalez consented.  Mr. Talamantes also consented to the search.  Mr. Rivera-Morales said that although it was not his car, the officer could search it.  Both Mr. Talamantes and Mr. Rivera-Morales denied that there were any weapons, drugs, or large amounts of cash in the car.

With the assistance of a dog, the officer found burlap sacks containing 93.06 kilograms of marijuana in the trunk.  Both Mr. Talamantes and Ms. Gonzalez admitted to knowing that the trip was to transport the marijuana from Deming to Albuquerque, but claimed that the marijuana belonged to Mr. Rivera-Morales.  Underneath the marijuana, the officer found a fully loaded assault rifle.  Mr. Talamantes said the rifle belonged to him and that he was going to sell it to the person who gave them the marijuana.  Mr.

2

Rivera-Morales made no statement at the time of his arrest, but later admitted to accompanying "another individual" to get marijuana, and that he was expecting to be paid $1,000 in return. Rec. vol. II, at ¶ ¶ 11-23 (Presentence Report ("PSR").

## B. Procedural Background

On June 30, 2004, Mr. Rivera-Morales pleaded guilty to conspiring to distribute 50 kilograms of marijuana. Four months later, a pretrial services officer filed a petition to arrest Mr. Rivera-Morales because he had absconded. On February 2, 2006, federal authorities found and arrested him in Texas.

In preparation for sentencing, the United States Probation Office prepared a PSR that calculated a base offense level of 24. Mr. Rivera-Morales received a two-level increase pursuant to United States Sentencing Guidelines ("USSG") § 2D1.1(b)(1) because a firearm was in the trunk with the marijuana. He also received a two-level increase for obstruction of justice pursuant to USSG § 3C1.1 because he absconded before sentencing and was a fugitive for more than a year. The total offense level was 28 and, having no criminal history, he was placed in criminal history category I. The resulting sentencing range recommended by the Guidelines was 78 to 97 months.

Mr. Rivera-Morales objected to the presentence report, specifically the two-level increase for possession of a firearm during the commission of the offense. He also objected to the determination that he was not eligible for the two-point "safety valve" reduction under USSG § 5C1.2(a). Mr. Rivera-Morales additionally argued that he was

entitled to a mitigating role adjustment, and that he was also entitled to an adjustment for acceptance of responsibility. Mr. Rivera-Morales urged the court to sentence him to 27 months in prison. The district court ultimately agreed with the probation officer and the government, sentencing Mr. Rivera-Morales to 78 months in prison, the low end of the Guidelines range.

## II. DISCUSSION

In the wake of *United States v. Booker*, 543 U.S. 220 (2005), we review sentencing decisions for reasonableness. *Rita v. United States*, ___ U.S. ___, 127 S. Ct. 2456, 2464 (2007); *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam). Sentencing has both procedural and substantive components. *United States v. Cage*, 451 F.3d 585, 591 (10th Cir. 2006). That is, both the length of the sentence and the method by which it was determined (i.e., the consideration of the Section 3553(a) factors) must be reasonable. *Kristl*, 437 F.3d at 1055.

Our reasonableness inquiry involves two steps. First, we must determine "whether the district court considered the applicable Guidelines range, reviewing its legal conclusions de novo and its factual findings for clear error." *Id*. If we find that it did, we presume it is reasonable. *See Rita*, 127 S. Ct. at 2462 (holding that appellate courts may apply presumptions of reasonableness to such sentences). In order to rebut this presumption, Mr. Rivera-Morales must show that based on the sentencing factors in 18 U.S.C. § 3553(a), the sentence is unreasonable. *Kristl*, 437 F.3d at 1055.

4

On appeal, Mr. Rivera-Morales argues that the sentence was procedurally unreasonable because (1) a two-level increase under USSG § 2D1.1(b)(1) is improper because the firearm was inaccessible and was for a purpose unrelated to the crime; (2) he should have been given an opportunity to qualify for the safety valve under USSG §§ 2D1.1(b)(9) & 5C1.2(a)(1)-(5); and (3) he should have been given a two-level reduction under USSG § 3B1.2(b) due to his relatively minor role in this offense.  Mr. Rivera-Morales also argues that the sentence – a term of imprisonment of 78 months – is substantively unreasonable.

## A.  Procedural Reasonableness

First, we must address whether the district court considered the applicable Guidelines range reviewing its legal conclusions de novo and its factual findings for clear error.  *Kristl*, 437 F.3d at 1055.

1. Increase for Possession of a Firearm

We review the district court's determination that Mr. Rivera-Morales possessed a firearm under USSG § 2D1.1(b)(1) for clear error.  *United States v. Topete-Plascencia*, 351 F.3d 454, 458 (10th Cir. 2003).

USSG § 2D1.1(b)(1) provides that the offense should be increased two levels "[i]f a dangerous weapon (including a firearm) was possessed."  The government bears the initial burden of showing, by a preponderance of the evidence, that a firearm was

possessed. *United States v. Pompey*, 264 F.3d 1176, 1180. To prove possession under § 2D1.1(b)(1), "the government need only show that the weapon was found in the same location where drugs or drug paraphernalia are stored." *United States v. Williams*, 431 F.3d 1234, 1237 (10th Cir. 2005) (internal quotation marks omitted). In this case, the rifle was discovered in the trunk, under the marijuana. The government therefore was easily able to prove "a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *United States v. Roederer*, 11 F.3d 973, 982 (10th Cir. 1993) (internal quotation marks omitted), thereby meeting its burden of showing that a firearm was possessed.

Once the government meets this initial burden, the burden shifts to the defendant to show that it was "clearly improbable" that the gun was connected to the offense. *Pompey*, 264 F.3d at 1181; *see also*, USSG § 2D1.1, cmt. n.3. Again, the gun, which Mr. Rivera-Morales knew was present, was found under 93 kilograms of marijuana. Mr. Rivera-Morales argues that because the gun was not easily accessible, it is clearly improbable that it was connected to the offense. Aplt's Br. at 14-15. We are not persuaded. We can easily envision a situation in which the defendants unload the contraband to be sold, something goes awry with the deal, and the defendants turn to the gun to inflict either intimidation or actual injury. Regardless of whether Mr. Rivera-Morales himself ever envisioned such a scenario, the burden is his to show that it is clearly improbable that the firearm was connected to the offense.

Mr. Talamantes, the driver of the vehicle and Mr. Rivera-Morales's co-defendant,

6

said that he intended to sell the rifle to the person who sold them the marijuana. However, the gun was in the car and fully loaded *after* the marijuana purchase. In light of this evidence, it was not clear error for the district court to find that Mr. Rivera-Morales did not show that it was "clearly improbable" that the gun was connected to the offense, and to accordingly apply the two-level increase under § 2D1.1(b)(1).

2. The safety valve provision

We review a district court's application of the Guidelines' safety valve provisions for clear error. *United States v. Stephenson*, 452 F.3d 1173, 1180 (10th Cir. 2006).

The "safety valve" provision of USSG § 2D1.1(b)(9) provides that if the defendant meets the five criteria set forth in § 5C1.2(a), then the offense level should be decreased by two levels. Section 5C1.2(a) provides:

> (1) the defendant does not have more than 1 criminal history point . . . ;        (2) the defendant di
> (3) the offense did not result in death or serious bodily injury to any person;
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise . . . ; and
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . .

Mr. Rivera-Morales clearly met three of the five criteria: he had no criminal history, the offense did not result in death or serious bodily injury, and he was not an organizer, leader, or supervisor of others in the offense. *Id.* The two remaining criteria that merit further discussion are: (1) that "not later than the time of the sentencing hearing,

7

the defendant has truthfully *provided* to the Government all information and evidence the defendant has concerning the offense or offenses . . . ."; and (2) that Mr. Rivera-Morales did not possess a firearm. *Id*. (emphasis added).

As to Section 5C1.2(a)(5)'s requirement that Mr. Rivera-Morales "truthfully *provide*[] . . . the Government [with] all information and evidence the defendant has concerning the offense or offenses . . . ," USSG § 5C1.2(a)(5) (emphasis added), here, Mr. Rivera-Morales offered to debrief the government before his sentencing, but the government declined. Though it is unclear why the government declined Mr. Rivera-Morales's offer of information, the denial does not qualify him for a two-level reduction under the safety valve provision.

We held in *Stephenson* a defendant cannot meet his duty to provide the government with all information he has through the disclosure of some information with only an *offer* as to the rest. 452 F.3d at 1182. The term "provide" in § 5C1.2(a)(5) "would be rendered meaningless if a defendant could qualify for the safety valve adjustment by simply opening his mouth and expressing a willingness to provide information." *Stephenson*, 452 F.3d at 1182. Therefore, the mere offer to provide information is not enough. Mr. Rivera-Morales would have had to actually provide all information he had to the government. Though the government made this task significantly more difficult by declining Mr. Rivera-Morales's offer to de-brief, under § 5C1.2(a)(5), the burden is still on him to provide the information. For the foregoing reasons, the district court did not commit clear error by not giving Mr. Rivera-Morales a two-level reduction under the safety valve

provision.

Holding that it was not clear error for the district court to choose not to apply the safety valve provision because of Mr. Rivera-Morales's failure to de-brief, it is not necessary for us to address the firearm criterion. It is worth briefly noting, as the government, to its credit, did at oral argument, that a finding of possession of a firearm for the purposes of enhancement under § 2D1.1 (as the district court found here) does not necessarily preclude a § 5C1.2(a)(2) reduction.[2]

3. Reduction for a relatively minor role

We review the district court finding that Mr. Rivera-Morales was not a minor participant under USSG § 3B1.2(b) for clear error. *United States v. Lockhart*, 37 F.3d 1451, 1455 (10th Cir. 1994).

USSG § 3B1.2(b) provides that a defendant's offense level should be decreased by two levels "[i]f the defendant was a minor participant in any criminal activity." The commentary to that rule states, "This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him *substantially* less

---

[2] *United States v. Zavalza-Rodriguez*, 379 F.3d 1182 (10th Cir. 2004). While constructive possession is enough to prove that a gun "was possessed" under § 2D1.1, it is not necessarily enough to prove that a defendant "possessed a firearm" under § 5C1.2(a)(2). *Id.* at 1186-88. The evidentiary burdens on the defendant are different for each. "Whereas the defendant must show that it is clearly improbable that a gun was not used in connection with the offense to avoid the § 2D1.1 sentence enhancement," we reasoned, "[a] defendant . . . need only demonstrate by a preponderance of the evidence eligibility for the safety valve." *Zavalza-Rodriguez*, 379 F.3d at 1187.

culpable than the average participant." USSG § 3B1.2, cmt. n.3(A) (emphasis added). It is not enough to show that a defendant was the least culpable in a given offense. *Lockhart*, 37 F.3d at 1455. Instead, the defendant bears the burden of proving that he or she was a *minimal* or *minor* player in the offense. *Id*. Although there is no categorical rule on the matter, we routinely deny minor participant classification to drug couriers. *United States v. Caruth*, 930 F.2d 811, 815 (10th Cir. 1991) (noting several Tenth Circuit cases denying drug couriers minor participant status).

Mr. Rivera-Morales admitted that he was in the car in order to help drive the marijuana to its destination. He was present when the marijuana was loaded into the car and expected to be paid $1,000 for his driving services. Further, Mr. Talamantes and Ms. Gonzales both claimed the marijuana belonged to Mr. Rivera-Morales. Based on these facts, the district court found that Mr. Rivera-Morales had not proved "that he is more or less culpable than the other defendant." Rec. vol. III, at 19. Given the evidence, it was not clear error for the district court to find that Mr. Rivera-Morales was not substantially less culpable than the average defendant, and thus did not qualify for the two-level reduction under § 3B1.2(b).

## 4. The district court's explanation

Mr. Rivera-Morales complains that the district court did not discuss the sentencing factors individually, but instead uttered one sentence indicating that they had been considered. While in many cases it would be helpful for district courts to lay out their

10

reasons for a certain sentence in great detail, it is not usually necessary. *Rita*, 127 S. Ct. at 2468-69. Where, as here, a sentence falls within the Guidelines, "§ 3553(c) requires the court to provide only a general statement of the reasons for its imposition of the particular sentence." *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1199 (10th Cir. 2007) (internal quotation marks omitted). While Section 3553(a) does require courts to consider certain factors, it nowhere imposes a duty to specifically address those factors on record. *Id.* at 1201. The district court stated that it had considered all the Section 3553(a) factors, as well as the presentence report, Mr. Rivera-Morales's history and characteristics, the kinds of sentences available, and the advisory Guidelines sentence. Moreover, the court explicitly noted that the defense ably raised a number of issues and thanked Mr. Rivera-Morales's counsel for doing so. Rec. vol. III, at 18.

After examining these four issues, we hold that the district court did not err in its understanding or application of the Guidelines, and there was no clear error regarding findings of fact.

**B. Substantive Reasonableness**

We review a claim that a sentence is unreasonably long for "reasonableness." *United States v. Torres-Duenas*, 461 F.3d 1178, 1183 (10th Cir. 2006). "[R]easonableness review has functioned – in practice if not in name – as review for abuse of discretion." *United States v. Angel-Guzman*, ___ F.3d ___, No. 06-4003, 2007 WL 3146825, at *6 (10th Cir. Oct. 30, 2007). *See also*, *Gall v. United States*, ___ S. Ct. ___, No. 06-7949,

11

2007 WL 4292116, at *6 (Dec. 10, 2007) ("Our explanation of 'reasonableness' review in the *Booker* opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions."). A sentence within the properly calculated Guidelines range is presumptively reasonable on appeal. *Kristl*, 437 F.3d at 1054.

Mr. Rivera-Morales argues that the district court violated the statutory mandate that a sentence be "sufficient, but not greater than necessary, to comply with the purposes" set forth in §3553(a)(2). While the district court must employ this standard in crafting a sentence, we review the sentence only for reasonableness. *See Rita*, 127 S. Ct. at 2465. Because we have held that Mr. Rivera-Morales's sentence was properly calculated under the Guidelines, we presume it to be reasonable. *Angel-Guzman*, 2007 WL 3146825, at *8. Even though, by presuming reasonableness, we give significant deference to the district court's decision, a district court must still apply the § 3553(a) sentencing factors. *See Gall*, 2007 WL 4292116, at *7. In order to rebut this presumption therefore, Mr. Rivera-Morales must show that in light of the § 3553(a) factors, the sentence is unreasonable. *United States v. Kristl*, 437 F.3d 1050, 1055 (10th Cir. 2006).

Section 3553(a) requires the sentencing court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing] set forth in [Section 3553(a)(2)]." Section 3553(a)(2)'s factors include "the need for the sentence imposed . . . to promote respect for the law, and to provide just punishment [and] to afford adequate deterrence . . . ." Drug trafficking is a serious offense. *United States v. Carr*,

12

939 F.2d 1442, 1448 (10th Cir. 1991). Further, though Mr. Rivera-Morales had no criminal history, he absconded after pleading and was a fugitive from the court for at least fifteen months before being found and sentenced. Considering these facts, in light of the above sentencing factors, the district court did not abuse its discretion in finding that a 78-month sentence – the low-end of the Guidelines range – was sufficient but not greater than necessary to comply with § 3553(a)(2)'s purposes.

Mr. Rivera-Morales has not met his burden of showing that the low-end of the Guidelines sentence is unreasonable. The fact that one sentence is reasonable does not mean that all others would be unreasonable, but to affirm, we must simply find "the chosen sentence, standing alone, is reasonable." *United States v. Jarillo-Luna*, 478 F.3d 1226, 1230 (10th Cir. 2007) (citing *Booker*, 543 U.S. at 261). Accordingly, we hold this sentence to be substantively reasonable.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.

Entered for the Court


Robert H. Henry
Circuit Judge

13