FILED
United States Court of Appeals
Tenth Circuit

March 11, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff – Appellee,

v.

FORREST GENE HENDERSON, JR.,

      Defendant – Appellant.

No. 14-5025
(D.C. No. 4:13-CR-00149-JHP-1)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **HOLMES**, and **PHILLIPS**, Circuit Judges.

Forrest Henderson, Jr., appeals his sentence. He challenges the district court's

application of a two-level sentencing enhancement under U.S.S.G. § 2D1.1(b)(12) for

maintaining a premise for the purpose of distributing a controlled substance, and another

two-level enhancement under § 2D1.1(b)(1) for possessing a firearm. Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm the § 2D1.1(b)(12) enhancement, reverse

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 32.1.

the § 2D1.1(b)(1) enhancement, and remand for resentencing in accordance with this order and judgment.

# I

In 2012, Homeland Security Investigations ("HSI") received information from a confidential informant that Henderson was involved in illegal drug distribution. From December 2012 through May 2013, HSI agents surveilled Henderson at his home and observed multiple parties enter and exit the residence after short periods, which they believed to be consistent with drug-trafficking activity. On February 1, 2013, the informant conducted a controlled purchase of methamphetamine from Henderson at his residence. Additional controlled purchases were completed on February 11 and April 4, 2013, each involving amounts of methamphetamine worth several hundred dollars.

In July 2013, the informant told HSI agents that he had paid Henderson a $50 deposit toward the purchase of a handgun. HSI agents set up a controlled handgun purchase a few days later. During the purchase of this firearm, the informant inquired about purchasing methamphetamine. Henderson explained that he would not have any methamphetamine until later that day. At that time, Henderson made arrangements on his cell phone to receive methamphetamine from his supplier.

Henderson was arrested and later pled guilty to one count of "knowingly and intelligently conspir[ing] with others to possess with the intent to distribute and to distribute 5 grams or more of methamphetamine." The charge related to his conduct between January 2013 and April 4, 2013. Henderson's Presentence Investigation Report

("PSR") calculated a total offense level of 27, which included a two-level increase pursuant to § 2D1.1(b)(12) "because the defendant maintained a premise for the purpose of distributing a controlled substance," and a two-level increase pursuant to § 2D1.1(b)(1) "because a firearm was possessed."

Henderson objected to these enhancements. He argued that the firearm enhancement should not apply because he sold the handgun at issue several months after the dates of the offense to which he pled guilty, and because there was no temporal or spatial relationship between the weapon, the drug trafficking activity, and himself. Henderson also objected to the premises enhancement, contending that his primary use of the premises was as a residence and that the drug trafficking activities were merely incidental or collateral uses. The district court rejected these arguments and imposed both enhancements. Henderson timely appealed.

**II**

A district court commits procedural error when it fails to properly calculate the correct Guidelines range. United States v. Lente, 647 F.3d 1021, 1030 (10th Cir. 2011). "The government has the burden of proving by a preponderance of the evidence any findings necessary to support a sentence enhancement." United States v. Gambino-Zavala, 539 F.3d 1221, 1228 (10th Cir. 2008). We review the factual determinations of the district court for clear error, United States v. Gomez-Arrellano, 5 F.3d 464, 465 (10th Cir. 1993), and "[w]e review de novo whether the facts found by the court support the application of the guideline it selected," United States v. Cherry, 572 F.3d 829, 831 (10th

Cir. 2009).

## A

Both parties agree that the district court erred when it imposed a two-level increase for possessing a firearm pursuant to § 2D1.1(b)(1). This conclusion is compelled by United States v. Castro-Perez, 749 F.3d 1209 (10th Cir. 2014). In that case, the defendant sold a gun and cocaine to an undercover agent on the same day, but at different times. Id. at 1210. The district court applied a § 2D1.1(b)(1) enhancement because the sale of the firearm was negotiated at the same time as the drug transaction, because of the temporal proximity of the two sales, and because the gun was sold to a "known drug user." Id. This court reversed, holding that the application of this enhancement was error because "there was no physical relation between the weapon and the drug trafficking activity." Id. at 1211. We explicitly rejected the contention that proof of an ongoing conspiracy excused the government from establishing that the firearm was spatially close to specifically identifiable drug-trafficking activities. Id. As the government concedes, the physical link between the firearm and drugs in Henderson's case is even more attenuated than in Castro-Perez. Accordingly, we conclude that the district court erred in applying the firearm enhancement.

## B

The Guidelines provides for a two-level increase "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." § 2D1.1(b)(12). A comment on that Guideline explains that "[m]anufacturing or

distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." § 2D1.1 cmt. n.17.  Courts applying the above-quoted language "should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes." Id.  We treat a Guidelines comment as "authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38 (1993).

Henderson contends the district court erred when it applied a two-level increase under § 2D1.1(b)(12) because:  (1) there was insufficient evidence to support the increase; and (2) the district court failed to properly compare the frequency of licit and illicit uses in reaching its determination.

In support of his insufficient evidence claim, Henderson argues that the government failed to establish that the drug purchases occurred inside, rather than outside, the premises, and that the government failed to produce evidence relating to "drug business" or "tools of the trade."  The PSR, however, explained that HSI agents conducting surveillance at Henderson's house between December 2012 and May 2013 observed "multiple parties" entering and exiting his residence in a manner that "they believed to be consistent with drug trafficking activity."  And the presence of "tools of the trade" is not required to support a § 2D1.1(b)(12) enhancement.  Cf. United States v.

-5-

Johnson, 737 F.3d 444, 448 (6th Cir. 2013) (explaining that facts found to be sufficient to support an enhancement in one case may not be necessary to support that enhancement in other cases). Moreover, the evidence shows that Henderson sold methamphetamine to a confidential informant at or near his residence on three separate occasions and that he had arranged for the delivery of an additional shipment of methamphetamine in August 2013. See United States v. Verners, 53 F.3d 291, 296 (10th Cir. 1995) (concluding that 21 U.S.C. § 856(a)(1), a criminal statute parallel to § 2D1.1(b)(12), "was designed to punish those who use their property to run drug businesses"). This evidence is sufficient to support the inference that Henderson maintained the residence as a premise for the purposes of distributing methamphetamine. Accordingly, we cannot say that the district court clearly erred in so finding.

A key distinction identified by Henderson between § 2D1.1(b)(12) and its parallel criminal statute, § 856(a)(1), is that the commentary to the former explicitly directs courts to compare the frequency of licit and illicit uses of the property. Henderson argues that the district court failed to engage in this comparison, and that the unlawful uses of the premises were incidental or collateral in comparison to the frequency with which the property was used as a residence. We disagree. A review of the record indicates that the district court properly understood that the unlawful use must have been "one of the primary or princip[al] uses of the premises rather than an incidental or collateral use for the premises," and that it engaged in a comparison of the lawful and unlawful uses. The court surveyed the evidence before it and concluded that, although the premises was used

as a residence, the drug trafficking activities were frequent and substantial enough to warrant the enhancement. Given the evidence discussed above, we cannot say that the court failed to properly conduct a comparison of the uses of the property.

## III

Henderson's two-level enhancement pursuant to § 2D1.1(b)(12) is **AFFIRMED**. His two-level enhancement pursuant to § 2D1.1(b)(1) is **REVERSED**. Accordingly, this case is **REMANDED** for resentencing consistent with this order and judgment.

Entered for the Court

Carlos F. Lucero
Circuit Judge

-7-